# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15-cv-00283-MOC
# (3:95-cr-00031-MOC-2)

| | |
|---|---|
| ERIC CREIGHTON SAMPSON, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. [Doc. 1]. Also pending is Petitioner's Motion to Amend/Correct Petitioner's Motion to Vacate. [Doc. 21]. Petitioner is represented by Noell Tin of the law firm of Tin Fulton Walker & Owen, PLLC.

## I.     BACKGROUND

### A.     Petitioner's offense conduct

Between 1992 and 1995, Petitioner participated in a conspiracy to possess with intent to distribute powder and crack cocaine in the Charlotte area. [Doc. 11 at ¶ 8: PSR]. The conspiracy was responsible for the distribution of more than 19 kilograms of crack cocaine, and members of the conspiracy, including Petitioner, regularly carried firearms during drug transactions. [Id. at ¶¶ 8-10]. Additionally, members of the conspiracy obtained some of the powder and crack cocaine they distributed by robbing other drug dealers. [Id. at ¶¶ 8, 12].

### B.     Petitioner's conviction and sentence

Petitioner was indicted by the grand jury and charged with conspiracy to possess with intent to distribute powder and crack cocaine within 1,000 feet of a protected area, in violation of 21

U.S.C. §§ 841(a)(1), 846, and 860. [Criminal Case No. 3:95-cr-00031-MOC-1,[1] CR Docs. 1, 8: Indictment]. Petitioner was convicted of the conspiracy offense after a jury trial. [CR Doc. 190: Jury Verdict]. The probation officer prepared a Presentence Report and began with a base offense level of 38 based on Petitioner's responsibility for more than 1.5 kilograms of crack cocaine. [Doc. 11 at ¶ 19]. The probation officer recommended a two-level enhancement based on Petitioner's possession of a firearm during the drug-trafficking conspiracy, a three-level enhancement based on Petitioner's role as manager or supervisor in the conspiracy, and a two-level enhancement because Petitioner was responsible for the distribution of cocaine within 1,000 feet of playgrounds and schools, resulting in an adjusted offense level of 45. [Id. at ¶¶ 20, 22, 24, 25]. Based on Petitioner's two prior convictions for assault on a female, the probation officer concluded that Petitioner was a career offender under Sentencing Guidelines § 4B1.1. [Id. at ¶ 28]. However, because application of the career-offender guideline resulted in an adjusted offense level of 37, below the otherwise-applicable adjusted offense level of 45, the probation officer calculated a total offense level of 45. [Id. at ¶¶ 28-29]. This offense level was automatically reduced to a level of 43, which resulted in a Sentencing Guidelines term of life in prison. [Id. at ¶ 64]. Adopting the PSR, this Court sentenced Petitioner to life in prison. [CR Doc. 217: Judgment].

    **C.    Petitioner's post-conviction background**

Petitioner appealed, and the Fourth Circuit affirmed this Court's judgment. United States v. Sampson, 140 F.3d 585 (4th Cir. 1998).[2] On April 5, 1999, Petitioner filed his first motion to

---

[1] Citations the record in Petitioner's underlying criminal case are denoted herein as ["CR Doc. __"].

[2] In its opinion affirming Petitioner's judgment, the Fourth Circuit held that it was not clear whether Petitioner's offense level was properly increased by one level based on the amount of drugs sold or possessed within a protected area, as required for the two-level enhancement under Sentencing Guidelines § 2D1.2(a)(1), but because that single offense level would not have

2

vacate under 28 U.S.C. § 2255.  [Civil Case No. 3:99-cv-127, Doc. 1].  This Court dismissed Petitioner's motion on the merits with prejudice on July 25, 2001.  [Id., Doc. 21].  On April 17, 2009, Petitioner filed a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2) and Amendment 706 to the United States Sentencing Guidelines.  [CR Doc. 308].  This Court determined that a two-level reduction in Petitioner's total offense level based on Amendment 706 would result in a total offense level of 42.  [Id. at 318].  Based on this determination, this Court granted Petitioner's § 3582(c)(2) motion, reducing Sampson's sentence to 360 months in prison.  [Id. at 318].  On October 5, 2012, this Court denied Petitioner's motion for a sentence reduction based on Amendment 750 to the United States Sentencing Guidelines.[3]  [Id. at 368].

On June 15, 2015, a North Carolina state-court judge granted Petitioner's motion for appropriate relief and vacated one of his two prior convictions for assault on a female.  [Doc. 1 at 14-16].  Two weeks later, Petitioner filed the pending motion to vacate, arguing that he was improperly designated a career offender and seeking relief from his sentence.  [Doc. 1].

On August 17, 2015, the probation office submitted a Supplemental Presentence Report addressing Petitioner's eligibility for a sentence reduction under § 3582(c)(2) based on Amendment 782 to the United States Sentencing Guidelines.  [CR Doc. 393].  The probation office noted in its Supplemental PSR that Sampson's total offense level, even with the reduction, was a

---

affected Petitioner's total offense level of 43, the court did not vacate Petitioner's sentence for additional fact-finding by this Court.  See id. at 593-94.

[3] Petitioner argues that, "[a]t the point Amendment 750 came into effect, [Petitioner] began to be prejudiced by the career offender designation, and specifically by one of his misdemeanor convictions for assault on a female.  Without either one of the AOF convictions, [Petitioner] would not only have shed the career offender designation—reducing his criminal history category from VI to II—he would have also lost a criminal history point, ultimately reducing his criminal history category down to I.  This would have resulted in a new guidelines range of 292 months to 365 months.  [Doc. 10 at 4].

3

level 38, below the level 37 that applied based on his career-offender designation. [Id.]. One month later, on September 18, 2015, this Court denied Petitioner a reduction based on Amendment 782. [Id. at 401].

On November 18, 2015, the Government filed a response in opposition to Petitioner's motion to vacate and a motion to dismiss this action. [Doc. 7]. On December 23, 2015, Petitioner filed a Reply to the Government's response, asserting for the first time that he was improperly classified as a career offender because North Carolina's offense of assault on a female does not qualify as a "crime of violence" under Sentencing Guidelines § 4B1.2 and that he did not otherwise have two prior convictions for a crime of violence or controlled substance offense. [Doc. 10 at 11-13; see also U.S.S.G. § 4B1.1 (defining a career offender as a defendant who has "at least two prior felony convictions of either a crime of violence or a controlled substance offense")]. To support this argument, Petitioner relied on the Fourth Circuit's decision in United States v. Vinson, 805 F.3d 120 (4th Cir. 2015). [Doc. 10 at 1]. Petitioner also sought to add an alternative claim for relief under 28 U.S.C. § 2241. [Id. at 13]. This Court permitted the amended claims. [Doc. 12]. The Government filed a response in opposition to Petitioner's amended claims, arguing that they were procedurally defaulted, not cognizable under 28 U.S.C. § 2255, and failed as a matter of law under § 2241. [Doc. 13].

Six months after the Government filed its response, this Court ordered Petitioner to supplement his amended reply to the Government's response to his motion to vacate and ordered the United States to file a surreply. Seven months later, Petitioner filed an amended reply and a motion to further amend his motion to vacate. [Docs. 21, 22]. For the first time, Petitioner asserted a claim that his sentence was imposed in violation of the Due Process Clause, pursuant to the Supreme Court's holding in Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Court

4

held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague.[4] [See id.]. The Government filed a response and surreply. On May 11, 2017, this Court stayed this action pending the Fourth Circuit's decision in United States v. Brown. [Doc. 24]. On March 12, 2018, Petitioner filed a supplemental memorandum, conceding that Brown forecloses his Johnson claim. [Doc. 25]. On November 30, 2018, the Court stayed this action pending resolution of the Government petitioner for certiorari to the Supreme Court in United States v. Wheeler, 734 F. App'x 892 (4th Cir. 2018). [Doc. 29]. In March 2019, the Supreme Court denied certiorari in Wheeler. Thereafter, on April 5, 2019, the stay was lifted on Petitioner's motion to lift stay and for order granting relief under Wheeler. The parties responded and replied, respectively [Docs. 34, 36], and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims

---

[4] Following Johnson, on March 6, 2017, the Supreme Court held in Beckles v. United States that "the advisory Guidelines are not subject to vagueness challenges." 137 S. Ct. 886, 890 (2017) (where the petitioner argued that his career-offender sentence was erroneously enhanced by an unconstitutionally vague residual clause of U.S.S.G. § 4B1.2). The Court reasoned that, because the guidelines are not mandatory, due process is not implicated. Beckles did not, however, resolve the question of whether Johnson's constitutional holding applies retroactively to those defendants, like Petitioner, who were sentenced before United States v. Booker, 543 U.S. 220 (2005), when the Sentencing Guidelines were mandatory rather than advisory. On August 21, 2017, in United States v. Brown, 868 F.3d 297 (4th Cir. 2017), the Fourth Circuit Court of Appeals determined that because the Supreme Court's holding in Beckles left this question open, the Supreme Court has not recognized a right to challenge the pre-Booker mandatory Sentencing Guidelines as void for vagueness, and therefore such a right cannot be challenged in a § 2255 motion. After the Fourth Circuit denied Petitioner's motion for an en banc rehearing, the petitioner in Brown filed a petition for certiorari in the Supreme Court. On October 15, 2018, the Supreme denied certiorari in Brown, thus leaving the Fourth Circuit's Brown decision intact. Petitioner concedes that, following Beckles and Brown, he does not have a Johnson claim.

5

set forth therein. After examining the record in this matter, the Court finds that the argument presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

As noted, in his claim presented in his original motion to vacate, Petitioner seeks relief from his sentence under 28 U.S.C. § 2255, asserting that he was sentenced as a career offender under U.S.S.G. § 4B1.1 and that his sentence should be vacated in light of the state court's vacatur of one of the two predicate convictions upon which his career-offender designation was based. In its response, the Government argues that because Petitioner's sentence was determined based on U.S.S.G. § 2D1.1 and not based on the career-offender guideline in U.S.S.G. § 4B1.1, he has not stated a cognizable claim for relief under § 2255, and his motion should be dismissed.[5] For the following reasons, the Court agrees.

### A. Section 2255

The Supreme Court has long held that a claim of error that is neither jurisdictional nor constitutional is not cognizable in a motion under § 2255(a), unless it involves "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 784 (1979); Hill v. United States, 368 U.S. 424, 428 (1962). In United States v. Pettiford, 612 F.3d 270 (4th Cir. 2010), the Fourth Circuit described cognizable non-constitutional claims as those "involving a claim of 'error of fact or law of the "fundamental" character that renders the entire proceeding irregular and invalid.'" Id. at 278 (quoting United States v. Addonizio, 442 U.S. 178, 186 (1979)). Furthermore, the Fourth Circuit has explicitly held that, "[b]arring extraordinary

---

[5] While the Petitioner also amended his motion to claim entitlement to sentencing relief under § 2241, Petitioner concedes that he cannot meet the Wheeler test, discussed infra.

6

circumstances, . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999).

Finally, in United States v. Foote, 784 F.3d 931 (4th Cir. 2015), the Fourth Circuit held that the improper application of the career-offender guideline, even when it results in an advisory Sentencing Guidelines range significantly higher than that which would have applied without application of the guideline, is not a fundamental defect permitting the vacatur of the sentence under § 2255. Id. at 933, 942. In United States v. Foote, 784 F.3d 931 (4th Cir. 2015), the Fourth Circuit considered whether the defendant's claim that he was improperly sentenced as a career offender in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), was cognizable on collateral review under § 2255. Id. at 935. In Foote's case, his designation as a career offender increased his advisory Sentencing Guidelines range from a range of 151 to 188 months in prison to a range of 262 to 327 months in prison. Id. at 933. The district court sentenced Foote to 262 months in prison, at the bottom of the enhanced range. Id.

Notwithstanding the nearly 10-year increase in the advisory Guidelines range, the Fourth Circuit held in Foote that the improper application of the career-offender guideline is not a fundamental defect permitting the vacatur of the sentence under § 2255. Id. at 933, 942. In so holding, the Fourth Circuit noted that the Supreme Court has set a "remarkably high bar" for the correction of non-constitutional, non-jurisdictional errors under § 2255, id. at 936, and that the career-offender error did not "'affect the lawfulness of the sentence itself—then or now,'" given that it fell within the statutory limits established by Congress, id. at 943 (brackets omitted) (quoting United States v. Addonizio, 442 U.S. 178, 187 (1979)).

Like the defendant in Foote, Petitioner's claim here that this Court erroneously placed him into criminal-history category VI, rather than criminal-history category II, does not constitute a

7

fundamental defect that resulted in a complete miscarriage of justice.[6] Although one of the two convictions that supported his designation as a career offender has been vacated, that designation did not result in any increase in Petitioner's sentence because, based on the guideline applicable to drug-trafficking offenses, U.S.S.G. § 2D1.1, Petitioner faced a guideline term of life in prison. The application of the career-offender guideline, U.S.S.G. § 4B1.1, yielded an adjusted offense level below that yielded by § 2D1.1. Additionally, while Petitioner's career-offender designation increased his criminal-history category from II to VI, Petitioner faced a mandatory term of life in prison based solely on his total offense level of 43, even without consideration of the criminal-history category. [See Doc. No. 11 at ¶ 35]. In sum, misapplication of the career-offender guideline is not an error that is cognizable under § 2255. Even if it were, however, it would not be cognizable in this case because that designation had no impact on Petitioner's sentence.

Petitioner further argues that the increase in his criminal-history category from a category II to a category VI has resulted in his ineligibility for sentence reductions under Amendments 750

---

[6] Petitioner argues that the mandatory nature of the Guidelines at the time he was sentenced undermines the Government's argument that his claim is not cognizable, because Foote was sentenced after the Guidelines were held to be advisory only. Although the Fourth Circuit noted that Foote was sentenced under an advisory guideline scheme, Foote, 784 F.3d at 941, Petitioner has not explained why the mandatory nature of the Guidelines matters when his Guidelines range at the time he was sentenced was not governed by the career-offender guideline. If Petitioner were challenging the sentence he received in 1996 as a misapplication of the Sentencing Guidelines, the mandatory nature of the Guidelines at that time might impact the cognizability calculus, because he could argue that he might have received a lower sentence but for the miscalculation of his applicable Guidelines range and the mandatory nature of the Guidelines. He is not challenging the calculation of his applicable Guidelines range in 1996, however, because he acknowledges that, regardless of his criminal-history category, he faced a Guidelines term of life in prison based on a total offense level of 44, reduced to a level 43. The mandatory nature of the Guidelines in 1996 did not affect the criminal-history category into which Petitioner was placed and would not affect Petitioner's eligibility for a sentence reduction under § 3582(c)(2) today. Because Petitioner's applicable Guidelines term was not affected by the career-offender designation, the error he challenges—the fact that this Court was required to impose a life sentence—is irrelevant to Petitioner's claim for relief.

and 782 to the United States Sentencing Guidelines. As explained above, however, the fact that an error in the application of the Sentencing Guidelines may have resulted in a higher sentence is not enough to support a claim for relief under § 2255. If that were enough, then Foote's claim that his career-offender designation resulted in a sentence nearly 10 years higher than he otherwise would have received would have been held cognizable. Petitioner also asserts that the fact that the career-offender error did not impact his sentence at the time it was made is not dispositive of its cognizability, noting that at least two courts have granted post-conviction relief based on prejudice that was only realized years after the original judgments were imposed. [See Doc. 10 at 9-10]. Here, Petitioner has not presented a cognizable claim for relief, because he has asserted only an error in the application of the Sentencing Guidelines and the Fourth Circuit has held that such claims do not present fundamental errors redressable under § 2255. Whether the import of this error were clear within a year of Petitioner's judgment becoming final or not until now, 20 years after his conviction, it is not a claim that is cognizable under § 2255.

Petitioner also argues, based on Wheeler and Lester v. Flourney, 909 F.3d 708, 714 (4th Cir. 2018), that sentencing errors that result from erroneous career offender designations are necessarily fundamental defects entitling Petitioner to relief under § 2255. The Court addresses this argument below.

B.  **Section 2241 and Wheeler**

Petitioner amended his § 2255 motion to assert that, even if he is not eligible for sentencing relief under § 2255, he is eligible under 28 U.S.C. § 2241. Section 2255 is generally the proper means of collaterally attacking the validity of a federal conviction or sentence. In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (en banc). By contrast, § 2241 is a means of attacking the way a sentence is executed. Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir. 2000). As this Court

9

recognized in In re Jones, 226 F.3d 328 (4th Cir. 2000), however, where § 2255 is inadequate or ineffective to test the legal validity of a defendant's conviction, the "savings clause" of § 2255 permits a defendant to seek relief under § 2241. In re Jones, 226 F.3d at 333.

The bar on a federal prisoner's access to federal habeas unless § 2255 is "inadequate or ineffective to test the legality of his detention" establishes a jurisdictional requirement, which cannot be waived. Rice v. Rivera, 617 F.3d 802, 806-07 (4th Cir. 2010); see also Williams v. Warden, 713 F.3d 1332, 1340 (11th Cir. 2013) (citing cases). Furthermore, § 2255 "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision," because "[a] contrary rule would effectively nullify the gatekeeping provisions" restricting second or successive applications for collateral relief. In re Jones, 226 F.3d 328, 333 (4th Cir. 2000).

To invoke the savings clause, a prisoner must show a fundamental error in the criminal proceedings: "The essential function of habeas corpus is to give a prisoner 'a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence.'" Wofford v. Scott, 177 F.3d 1236, 1244 (11th Cir. 1999) (quoting In re Davenport, 147 F.3d 605, 608 (7th Cir. 1998)); see also Williams, 713 F.3d at 1342-43. The classic example is when "the substantive law has changed such that the conduct of which the prisoner was convicted is deemed not to be criminal." Jones, 226 F.3d at 334. Such an error is of fundamental magnitude because "conviction and punishment . . . for an act that the law does not make criminal inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346-47. Certain sentencing errors may also be of sufficient constitutional magnitude to constitute fundamental errors cognizable on habeas review under § 2241. See Bryant, 738 F.3d at 1271, 1274 (holding that the imposition of a sentence above the otherwise applicable statutory maximum, where circuit

law squarely foreclosed the petitioner from raising the claim at trial or during an initial § 2255 motion to vacate, constitutes such a fundamental error, redressable under the savings clause and § 2241).

To be sure, the Fourth Circuit in Wheeler established the criteria a petitioner must satisfy in order to challenge his illegal sentence under § 2241 through the § 2255(e) savings clause. 886 F.3d 415, 428 (4th Cir. 2018). Namely, the Fourth Circuit held that § 2255 is inadequate and ineffective to test the legality of a sentence when:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Wheeler, 886 F.3d at 429. In Wheeler, the Fourth Circuit held that, where all other elements of this test were met, a sentencing error that resulted in an increase in a petitioner's mandatory minimum sentence, was "sufficiently grave to be deemed a fundamental defect." 886 F.3d at 429-30, 433.

Here, Petitioner concedes that there has not been a change in "settled substantive law" that has been "deemed to apply retroactively on collateral review." [See Doc. 36 at 7-8]. Wheeler, therefore, does not apply to afford Petitioner sentencing relief under § 2241. Because Petitioner is unable to satisfy the Wheeler criteria in order to invoke § 2241 through the § 2255(e) savings clause, Petitioner is not entitled to sentencing relief on this ground.

Instead, Petitioner relies on Wheeler[7] to argue that sentencing errors that result from erroneous career offender designations are necessarily fundamental defects creating a claim cognizable under § 2255. Petitioner states that he "doesn't have the burden of alleging a change in the substantive law." [Doc. 36 at 7]. Rather, he is "entitled to proceed under 28 U.S.C. § 2255(f)(4)" because "an order vacating a federal inmate's prior state conviction is a matter of fact which starts a renewed one-year limitations period for attacking a federal sentence under [AEDPA]." [Doc. 36 at 7 (citing Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571 (2005))]. Petitioner, therefore, seeks to satisfy the fundamental defect predicate to cognizability under § 2255 with the general holding in Wheeler that a sentencing error based on an erroneous career offender designation is a "fundamental defect."

The Court cannot sanction this result. The determination of and allowance for a finding of a fundamental defect under Wheeler for purposes of § 2241 is necessarily dependent on the existence of the other predicates of the Fourth Circuit's Wheeler test. The Petitioner cannot pluck the finding of a fundamental defect in Wheeler, which allowed for sentencing relief under § 2241 through § 2255's savings clause for a petitioner was sentenced based on an errant increase in his mandatory minimum, based on the facts and law relevant and applicable to that decision, where all other elements of the Wheeler test are not met.

As such, Petitioner's claim for relief under § 2241 and under § 2255, through Wheeler, are also not cognizable.

---

[7] Petitioner also relies heavily on Lester v. Flourney, 909 F.3d 708 (4th Cir. 2018). Lester, however, does not apply, at least in part, for the same reasons that Wheeler does not afford Petitioner the relief he seeks.

## IV. CONCLUSION

For the reasons stated herein, the Court will deny and dismiss the § 2255 petition. Furthermore, Petitioner is not entitled to alternative relief under § 2241.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate [Doc. 1] is **DENIED** and **DISMISSED**.

2. Petitioner's Motion to Amend/Correct Petitioner's Motion to Vacate [Doc. 21] is **GRANTED** to the extent that the Court has considered the additional arguments made in the motion to amend. The Court notes, however, that Petitioner's concedes that the Johnson claim raised in the motion to amend is without merit.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: July 31, 2019



Max O. Cogburn Jr
United States District Judge

13